**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

ROBIN J. GREEN, o/b/o D.D.G.,     *
                                     *
    Plaintiff,                *
                                     *
vs.                             *   CIVIL ACTION 10-00610-KD-B
                                   *
MICHAEL J. ASTRUE,           *
Commissioner of Social Security, *
                                   *
    Defendant.               *

## REPORT AND RECOMMENDATION

Plaintiff Robin J. Green ("Plaintiff") brings this action on behalf of her minor child, D.D.G.[1], seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for child supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. ("SSI"). This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was waived. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

---

[1] Pursuant to the E-Government Act of 2002, as amended on August 2, 2002, the Court has redacted the minor child's name throughout this opinion and refers to him only by his initials, "D.D.G."

## I.  <u>Procedural History</u>

Plaintiff protectively filed an application for supplemental security income benefits on behalf of her son D.D.G. on July 25, 2006[2], alleging that her son has been disabled since September 3, 2001[3]. (Tr. 78; 386; 396-98; 401-11). In claiming benefits, Plaintiff alleges disability due to attention deficit hyperactivity disorder ("ADHD"), hyperactivity, and low IQ. (Tr. 465). Plaintiff's application was denied at the initial stage on October 23, 2006. (Tr. 387-390). She filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 391-92). On June 24, 2009, Administrative Law Judge D. Burgess Stalley held an administrative hearing, which was attended by Plaintiff, her son D.D.G., and her attorney. (Tr. 506-24). On July 6, 2009, the ALJ issued an unfavorable decision finding that D.D.G. is not disabled. (<u>Id.</u> at 21-36).

---

[2] Plaintiff has previously filed at least three other applications for benefits asserting similar claims, all of which were denied. (Tr. 51-6; 261-68; 272-74; 294-5; 373-83).

[3] The most recent decision denying Plaintiff benefits through February 14, 2006 is binding because Plaintiff did not appeal that decision. Thus, the decision before this Court is whether D.D.G. has been disabled since February 15, 2006. (Tr. 373-83). As such, any discussion of the medical or other evidence prior to that date is for the limited purpose of determining D.D.G.'s overall medical history in relation to the Court's analysis of Plaintiff's claims on appeal.

Plaintiff's request for review was denied by the Appeals Council ("AC") on September 24, 2010. (<u>Id.</u> at 9-12).

The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 1383(c)(3).

## II.  <u>Issues on Appeal</u>[4]

A.  Whether the ALJ's decision was supported by substantial evidence?

## III. <u>Factual Background</u>

D.D.G. was born on February 4, 1996. He was 10 years old and had completed fourth grade when his application was submitted. At the time of the administrative hearing on June 24, 2009, D.D.G. was 13 years old and entering eighth grade. (Tr. 78, 293-94, 510). At the hearing, D.D.G.'s mother testified that D.D.G. was "dismissed" from T.R. Miller Middle School and placed in W.S. Neil Middle School due to his behavior problems. According to Plaintiff, D.D.G. knocked down a steel door at school and had problems getting along with other students and teachers. (<u>Id.</u> at 511). She also testified that D.D.G. had been suspended from his current school five times

---

[4] While Plaintiff argues that the ALJ erred because she failed to properly consider the statements of D.D.G.'s teachers, and that the AC failed to explain why this case was not remanded, she has not developed these arguments, or set forth any facts in support of her assertions. Accordingly, these issues are deemed abandoned and are denied as a result.

during the past school year. (Id. at 512). In her testimony, Plaintiff acknowledged that D.D.G.'s primary problems involve his conduct and not his academics and that he receives "As and Bs, and sometimes Cs and Ds" at school. (Id. at 513). Plaintiff testified that D.D.G.'s medication was increased and that it helps him "only while the medication is in his system." She also reported that D.D.G. attends regular classes and not special education classes. (Id. at 514). According to Plaintiff, D.D.G. wants to play and is enrolled in football for the next season. (Id. at 515).

Plaintiff reported that D.D.G. does yard work with his father, that she sometimes has trouble getting D.D.G. to do his chores, that he is able to dress himself, that he enjoys riding his bike, and that he has no after-school activities. (Id. at 517-19). Plaintiff further testified that D.D.G. does not get along with his siblings and that he does not have friends in the neighborhood. (Id. at 520-21).

D.D.G. testified that he plays video games and plays the position of halfback.  According to D.D.G, he has attended some practices, and gets along well with the football coach and some of the kids on the football team. (Id. at 516). D.D.G. also testified that he does not see a school counselor. (Id. at 516).

D.D.G.'s ADHD medications referenced in the record include Metadate, Focalin, Ritalin, Risperdal, and Strattera. (Tr. 174, 179, 218, 222, 328, 448, 458, 460, 477).

## IV.  Analysis

### A.  Standard Of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[5]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial

---

[5]This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.   <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163 (S.D. Ala. 1999).

**B. <u>Childhood Disability Law</u>**

The Personal Responsibility and Work Opportunity Act of 1996, which amended the statutory standard for children seeking supplemental security income benefits based on disability, became effective on August 22, 1996. <u>See</u> Pub. L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (codified at 42 U.S.C. § 1382c). The definition of "disabled" for children is:

> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

<u>See</u> 42 U.S.C. § 1382c(a)(3)(C)(I), 20 C.F.R. § 416.906.[6]   The regulations provide a three-step sequential evaluation process

---

[6] On September 11, 2000, the Commissioner published Final Rules for determining disability for a child under the age of 18. <u>See</u> 65 Fed. Reg. 54,747, corrected by 65 Fed. Reg. 80,307. These rules became effective on January 2, 2001 and apply to Plaintiff's claim. <u>See</u> 65 Fed. Reg. at 54,751.

for determining childhood disability claims. 20 C.F.R. § 416.924(a).

At step one, a child's age/work activity, if any, are identified to determine if he has engaged in substantial gainful activity. At step two, the child's physical/mental impairments are examined to see if he has an impairment or combination of impairments that are severe. Under the regulations, a severe impairment is one that is more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). To the extent the child is determined to have a severe impairment, at step three, he must establish that the impairment results in marked and severe functional limitations. 42 U.S.C. § 1382c(a)(3)(C)(I). The regulations set forth that an "impairment(s) causes marked and severe functional limitations if it meets, medically equals or functionally equals the listings." 20 C.F.R. § 416.924(d).

A child's impairment(s) meets the Listings' limitations if he actually suffers from limitations specified in the Listings for his severe impairment. 20 C.F.R. § 416.926(d). A child's impairment medically equals the Listings if his limitations are at least of equal severity and duration to the listed impairment(s). Id. Where a child's impairment or combination of impairments does not meet or medically equal any Listing, then

7

the Commissioner must determine whether the impairment or combination of impairments results in limitations which functionally equal the criteria for a Listing.[7] Id.

C.   **Discussion**

   **1. ALJ's Decision**

In this action, the ALJ issued an unfavorable decision on July 6, 2009.  The ALJ determined that while D.D.G. has the severe impairments of conduct disorder, attention deficit hyperactivity disorder (ADHD), mild learning disorder NOS, and low normal intelligence, they do not meet, medically equal or functionally equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P. (Tr. 27-8).  The ALJ also found that D.D.G. has "less than marked" limitations in his ability to acquire and use information, attend and complete tasks, and interact and relate with others, and that he does not have any limitations in moving about and manipulating objects, caring for himself, and health and physical well-being. (Tr. 30-35).  Accordingly, the ALJ concluded that because D.D.G. does not meet Listing 112.11 and does not have an impairment or

_____

[7] In making this assessment, the reports of the State Agency medical consultants, reports of other treating, examining and non-examining medical sources, and the claimant's symptoms, including pain and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, are all taken into consideration. 20 C.F.R. §§ 416.927, 416.929; and SSR 96-5, 96-6p and 96-7p.

combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning, he is not disabled under the Act. (Tr. 35).

### 2. Record Evidence[8]

#### Academic Evidence

The relevant academic records reflect that D.D.G. attended Brewton Elementary School for grades first through fourth. (Id. at 430). School records show that D.D.G. passed all grade levels, was consistently promoted, and was in no special education classes[9]. (Id. at 230, 329, 430). Rhonda Adams, D.D.G.'s Language Arts and Social Studies teacher, and Sherry Hutte, a school counselor, completed a Teacher Questionnaire on September 26, 2006, which was approximately six weeks into D.D.G.'s fifth grade year. They opined that D.D.G. had no problems in the domains of acquiring and using information, interacting and relating with others, moving about and

---

[8] While evidence submitted to the Appeals Council is in the record (Tr. 494-505), the undersigned has not discussed same herein because said evidence was not before the ALJ at the time of her decision. Some of the records do not relate to the time period in question while others are cumulative of evidence already in the record.

[9] There is some indication in the record that D.D.G. participated in a "special" reading class at some point. See (Tr. at 344, 409).

manipulating objects, and caring for himself, and that "when he's on his medication, there are no problems in [the area of attending and completing tasks]." The Questionnaire also noted that D.D.G. was taking Focalin and that he has a hard time sitting still, behaving, and focusing when he does not take his medication. The teachers opined that D.D.G. "does well when he's on his medication." (<u>Id.</u> at 422-32).

While at Brewton Middle School, D.D.G. was suspended for disciplinary infractions on multiple occasions and was ultimately forced to withdraw from the school for the 2007-2008 school year.  At the time of the administrative hearing, he was enrolled at W.S. Neal Middle School. (<u>Id.</u> at 431-5, 440-1, 494-98).  The record reflects that D.D.S. was suspended on five occasions for misconduct and disruptions between September 2008 and March 2009. (<u>Id.</u> at 512).

<u>Medical Evidence</u>

The relevant medical evidence of record shows that Plaintiff first presented to psychologist Robert A. DeFrancisco, Ph.D ("Dr. DeFrancisco"), on October 5, 2001, and has been seen continually thereafter. (<u>Id.</u> at 94, 237-255, 344-69, 462-68, 492-93, 499, 501). Dr. DeFrancisco diagnosed D.D.G. with ADHD, low normal intelligence, and learning disorder NOS. D.D.G. was placed on medication by his treating physician, Elizabeth Low, M.D. ("Dr. Low"). (<u>Id.</u> at 243-45, 466). Treatment records from

10

Brewton Medical Center and from Dr. DeFrancisco document that D.D.G. has been treated with various medication including Metadate, Ritalin, Focalin, Risperdal, and Stattera for symptoms related to ADHD. (Id. at 219, 350-62, 436-9, 458-60).

On a Slosson screening test administered by Dr. DeFrancisco in January 2002, D.D.G. achieved an IQ score of 88. (Id. at 246).

In a Summary of Psychological Evaluation completed by Dr. DeFrancisco on May 6, 2003, he reported that D.D.G. was evaluated with the WIAT on March 7, 2002. At the time, he was age 6.4 and was in the first grade. The WIAT screening indicated a standard score of 85, which placed D.D.G. in the low average range with a grade equivalent of K-3 and age equivalent of 5.9. Dr. DeFrancisco opined D.D.G. was 5 months behind age-wise and a year behind grade-wise. Further, Dr. DeFrancisco noted that Plaintiff reported that at home and at school, D.D.G. was having behavior problems and problems staying focused problems and completing chores. Dr. DeFrancisco also noted that the medication and behavioral programming had helped. (Id. at 243-4).

In a letter dated March 22, 2004, Dr. DeFrancisco reported that testing on the ADHDT Gilliam Test revealed an ADHD quotient of 117, which placed D.D.G. in the above average range of having ADHDT syndrome, characterized by hyperactivity, impulsivity, and

inattention. He further opined that D.D.G. has extreme inappropriate social functioning; i.e., in the sense that D.D.G. is constantly reprimanded at school, constantly loud, impulsive, and has difficulty getting along with other students. Dr. DeFrancisco noted that D.D.G. has low normal functioning and marked difficulty with concentration, persistence, and pace. Dr. DeFrancisco also opined that D.D.G. had marked and severe problems with his inattention, impulsiveness, and hyperactivity, and although his medication seemed to control his attention span "from time to time," he continued to have behavioral problems. (Id. at 344).

On July 6, 2004, Dr. DeFrancisco noted that Plaintiff reported that D.D.G. had severe temper tantrums. He opined that D.D.G. needed more outdoor activities and that lack of a father figure in the home was showing in "his developmental progress." (Id. at 359). On visits August 18, 2004, October 6, 2004, and December 6, 2004, Dr. DeFrancisco observed that D.D.G. does well when he takes his medications and that supportive therapy and medication would be continued. (Id. at 356-8).

During a February 7, 2005 visit, Dr. DeFrancisco noted that that D.D.G. was doing fairly well on Ritalin 30 mg and Focalin 10 mg. He also noted that D.D.G. was in normal classes in the third grade, that while he continued to have oppositional problems, they were better controlled with medication, and that

Plaintiff was not "much of a disciplinarian." (Id. at 355). During a visit on May 9, 2005, Dr. DeFrancisco noted that D.D.G. was "doing much better on his medication" and that his achievement scores were normal. On the WRAT-3, D.D.G. scored a CA of 9.3 and a grade of third. On evaluation, D.D.G. appeared stable, and his mental status was within normal limits. (Id. at 353-4).

During a psychology session on July 25, 2006, D.D.G. was administered the House-Tree-Person (HTP) test. Dr. DeFrancisco observed that D.D.G. approached the test without much thought or organization, and that he had passive-aggressive tendencies. According to Dr. DeFrancisco, Plaintiff "does not seem to be concerned about disciplining him as much as she seems to be focused on getting disability for him. Quite frankly, I think he is scoring too high to deal with that. Despite the fact that he tends to have some socialization problems, other times he tends to be compliant and interactive." (Id. at 442).

In the treatment notes dated July 2, 2007, Dr. Francisco indicates that Plaintiff had enlisted the help of Mr. Jernigan for social security benefits. He also noted that D.D.G. had been thrown out of Brewton City Schools because of aberrant behavior, and that he reported that the Strattera 25mg made him too sleepy; thus, the dosage was reduced to 10mg. Dr. Francisco observed that D.D.G. was cooperative, friendly and interactive,

13

but offered no explanation for why he acts out. Dr. Francisco noted that he did not gain any insight into D.D.G.'s problems, and opined that Plaintiff continued to have multiple issues including having too many children. In addition to adjusting D.D.S's medication, D.D.G. was to continue with family sessions. (Id. at 493)

Dr. DeFrancisco next saw D.D.G. in a family session on August 15, 2007. Dr. DeFrancisco observed that D.D.G. was cooperative, friendly and interactive, and that his issues center around his conduct problems and his inability to handle himself responsibly. Dr. Francisco noted that D.D.G. had been tried on various medications without much success; yet, he appeared to be stable at that point. Dr. Francisco also noted that D.D.G. needed to be administered the Millon Pre-adolescent inventory, and that D.D.G. would be continued on his medication and with the family sessions. (Id. at 492).

On September 3, 2007, Dr. DeFrancisco completed a psychological evaluation of D.D.G. at the request of Plaintiff's counsel. Dr. Francisco noted that D.D.G. had a working diagnosis of conduct disorder; ADHD; low normal intelligence; mild learning disorder; and passive aggressive tendencies. (Id. at 456-61). He noted that D.D.G. was tried on numerous medications and that Strattera 25 mg worked best for him. He

also noted that D.D.G. had been expelled from the Brewton City School System that year due to unruly behavior.

On exam, D.D.G. was found to have low normal intelligence with a Full Scale IQ of 81 on the WPPSI. Dr. DeFrancisco noted that D.D.G. was "very stubborn and defiant both in the session and also at school and at home." He also observed that D.D.G. was alert, oriented, interactive and that he put forth an accurate effort. (Id. at 460). D.D.G. was administered the MPACI and the testing results showed extensive signs of disruptive behavior and severe impulse control problems. Dr. DeFrancisco noted "indications of conduct disorders with little regard for other people, resisting the influence of authority, and blatant hostility towards them... [H]is personality patterns are very unruly and he shows social as well as psychological underdevelopment." (Id.) He opined that D.D.G.'s "unruly tendencies suggest that he would have difficulty in treatment and indeed through my years of treatment with him it has been very difficult to stabilize this individual." (Id.) Dr. DeFrancisco suggested D.D.G. was at a high risk for delinquency and drug seeking behavior. (Id.)

In an attached questionnaire, Dr. DeFrancisco opined that D.D.G. had moderate restrictions of activities of daily living and in his ability to perform repetitive tasks in a school setting; a marked degree of difficulty in maintaining social

functioning; marked episodes of deterioration; marked limitations in his ability to carry out instructions in a school setting and to respond appropriately to supervision in a school setting; moderate to marked limitations in his ability to respond appropriately to school matters in a work setting and to perform simple tasks in a school setting; and frequent deficiencies of concentration, persistence or pace. (Id. at 458-9).

D.D.G. was next seen by Dr. DeFrancisco on December 14, 2007, for psychological counseling. The notes reflect that D.D.G. was in the sixth grade at that time, and he was administered the WRAT-4. His scores reflected a sixth grade reading level with a standard score of 100; fifth grade spelling level, with score of 95; fifth grade arithmetic level, with score of 91; a fourth grade reading comprehension level, with score of 89; and a fifth grade reading composite level, with a score of 94. (Id. at 466-8). Dr. DeFrancisco observed that D.D.G. was not hyperactive and that his mood and affect appeared adequate. Dr. Francisco opined that D.D.G.'s oppositional problems probably resulted from inconsistent parenting and low normal IQ functioning. (Id. at 468).

In notes from a visit on February 1, 2008, Dr. DeFrancisco noted that D.D.G. might need an updated IQ test. He further observed that D.D.G. probably had borderline to low average

16

intelligence, and his achievement scores were commensurate with his IQ functioning. Dr. DeFrancisco also noted that D.D.G. comes from an impoverished background, without much home supervision, and while he does have some learning problems, they are "not sufficient to the point where he is markedly behind." (Id. at 467). Dr. Francisco observed that during the session, D.D.G. was alert, oriented, and "conduct[ed] himself quite admirably." D.D.S. was to continue on Strattera 18 mg and with supportive therapy. (Id.)

During a March 6, 2008 visit, Dr. DeFrancisco noted that D.D.G. has some ADHD and conduct problems, and that he is lazy and lacks consistent supervision. He also opined that D.D.G. does not have any major bipolar problems.  (Id. at 466). Treatment notes from D.D.G.'s April 23, 2008 visit reflect that D.D.G. was alert, oriented, and interactive, and that no mental problems were noted. Plaintiff requested a personality test and reported that D.D.G. had been suspended from school on three different occasions for aggressive behavior. D.D.G. reported that other kids start fights with him, and he just fights back. Dr. DeFrancisco again opined that D.D.G. has conduct problems and noted "inconsistent parenting." (Id. at 465).

On July 22, 2008, Dr. DeFrancisco went over the results from D.D.G.'s MPACI evaluation.  It showed ADHD with deficits in attention and concentration. It also showed disruptive behavior

and lack of impulse control consistent with someone with Mild Bipolar problems. He noted that D.D.G. has many unruly personality features, and that none of D.D.G.'s medications have been successful in controlling his focus, attention and mood swings. (Id. at 464).

Treatment notes from October 27, 2008, reflect that Plaintiff reported that D.D.G. was still acting up in school, and he had three Fs on his report card. Dr. DeFrancisco opined that D.D.G seems to have more conduct disorder and an impulse control disorder and while taking Risperdal 0.25 mg twice a day was helping, D.D.G.'s future "does not look very good." (Id. at 463).

In the treatment notes dated December 11, 2008, Dr. DeFrancisco noted that D.D.G. has a history of conduct disorder, emotional problems and poor grades in school, and he again diagnosed D.D.G with low normal intelligence, learning disorder, ADHD and  conduct disorder.  Dr. DeFrancisco also noted that Plaintiff reported that D.D.G. continues to act up in school, that D.D.G. is taking Risperdal 0.25 mg twice daily, that he has no further recommendations for treatment, and that he thinks that Plaintiff "certainly would like him to get disability to help her with the family situation." (Id. at 462)

The record also reflects that a Childhood Disability Evaluation Form was completed on October 20, 2006, by Gordon J.

Rankart, Psy.D, a representative of the Agency. (Tr. 450-55). In the Form, he diagnosed D.D.G. with ADHD and conduct disorder and noted his low IQ. He opined that D.D.G.'s mental limitations were "mild" and "not severe," and specifically determined that he had no limitation in acquiring and using information, moving about and manipulating objects, and caring for himself. Mr. Rankart also opined that D.D.G. had less than marked limitations in attending and completing tasks and interacting and relating with others. (Id.)

### 3.   Alleged Errors

In her brief, Plaintiff argues that the ALJ erred by finding that D.D.G.'s impairments do not meet or equal listing 112.11.[10]   According to Plaintiff, the ALJ incorrectly relied

---

[10] Listing 112.11 concerns ADHD, the requirements of which are as follows:

> Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
> A. Medically documented findings of all three of the following:
>
>> 1. Marked inattention; and
>> 2. Marked impulsiveness; and
>> 3. Marked hyperactivity;
>
> AND

(Continued)

upon the opinion of the DDS consultant, and D.D.G.'s teachers' statements to find that the medically documented findings do not establish marked inattention, marked impulsiveness, and marked hyperactivity. (Doc. 19). Specifically, Plaintiff contends that the ALJ's reliance on a 2006 Teacher Questionnaire and a 2006 report from Dr. DeFrancisco, which both indicated that D.D.G.'s condition was controlled with medication, was misplaced. According to Plaintiff, the ALJ failed to recognize that in Dr. DeFrancisco's subsequent evaluation in September 2007, he determined that the medications that D.D.G. had taken during 2004-2006 were no longer effective; thus, until D.D.G's conduct disorder and inattention can be effectively treated with medication, counseling, and behavioral rehabilitation programs, such that D.D.G. can function with teachers and fellow students, he has "marked restrictions entitling him to disability." (Doc. 19 at 12-14).

---

> B. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.11 (2009).

In opposition, Defendant argues that Plaintiff has failed to establish that D.D.G. was disabled at the time her application for benefits was filed, i.e., as of August 11, 2006; thus, she is not entitled to benefits on his behalf. Defendant further argues that the record contains ample evidence from Dr. DeFrancisco, Plaintiff's testimony, and D.D.G.'s teachers that D.D.G's condition was controllable as long as he took his prescribed medication, although he was not always compliant. According to Defendant, Plaintiff's pursuit of disability for her son and lack of supervision for D.D.G. were all factors the ALJ could properly consider in reaching her decision. Defendant further argues that the ALJ did not err in according little weight to Dr. DeFrancisco's September 2007 report because it was not supported by the record evidence. (Doc. 21).

The undersigned notes, as a preliminary matter, that the determination of whether or not a claimant's condition qualifies as a disability under the SSI requirements is based on the applicant's condition at the time of the application, up to and including his condition at the time of the administrative hearing, which in this case was June 24, 2009. Of course, if the applicant's condition worsens after the hearing, he must file a new application alleging a new onset date. See Bryant v. SSA, 2010 U.S. Dist. LEXIS 52704, *5 (N.D. Fla. May 25, 2010).

Turning next to Plaintiff's argument that the ALJ failed to accord proper weight to Dr. DeFrancisco's September 2007 evaluation, the law in this Circuit is clear that "[t]he ALJ must generally give the opinion of a treating physician 'substantial or considerable weight' absent a showing of good cause not to do so." Newton v. Astrue, 297 Fed. Appx. 880, 883 (11th Cir. 2008). See also Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (a treating physician's opinion must be given substantial weight unless good cause is shown to the contrary). The Eleventh Circuit has concluded "good cause" exists when a treating medical professional's opinion is not bolstered by the evidence, is contrary to the evidence, or when the treating medical professional's opinion is inconsistent with his or her own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

If an ALJ elects to disregard the medical opinion of a treating physician, then he or she must clearly articulate the reasons for so doing. Id. The ALJ may also devalue the opinion of a treating physician where the opinion is contradicted by objective medical evidence. Ellison v. Barnhart, 355 F.3d 1272, 1275-76 (11th Cir. 2003) (per curiam), citing Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (holding that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion") (citation omitted);

Kennedy v. Astrue, 2010 U.S. Dist. LEXIS 39492, *22-23 (S.D. Ala. Apr. 21, 2010) ("[I]t is the ALJ's duty, as finder of fact, to choose between conflicting evidence[,] and he may reject the opinion of any physician when the evidence supports a finding to the contrary.").

The undersigned finds that the ALJ's decision denying benefits is supported by substantial evidence. In Dr. Francisco's September 2007 Assessment, he opined that D.D.G. had marked restrictions in maintaining social functioning, marked episodes of deterioration, marked limitations in understanding, carrying out and remembering instructions in a school setting, marked limitations in responding appropriately to supervision in a school setting, and moderate to marked limitations in responding to school matters, performing simple tasks in school and performing tasks in a school setting.

In according little weight to the limitations contained in Dr. DeFrancisco's Assessment, the ALJ stated as follows:

> As for the opinion evidence, the undersigned gives little evidentiary weight to Dr. DeFrancisco's opinions in Exhibit C-4F, because the reported degree of limitation is excessive compared to mental status exam findings, behavioral observations, and diagnostic impressions contained in his own treatment notes. Moreover, the reported limitations are totally at odds with the assessment and observations of the claimant's teacher (C-5E), and with the conclusions of the state agency consultant who found no severe impairment (C-3F).

23

(Tr. at 30).

As noted supra, Plaintiff in essence argues that the records demonstrate that prior to 2007, D.D.G.'s symptoms were controlled with medication; however, in 2007, the medication was no longer effective, and D.D.G. experienced marked restrictions in attention, impulsiveness and hyperactivity, which resulted in work restrictions in attending and completing tasks and interacting and relating with others. (Doc. 19 at 13-15).

First of all, neither Dr. DeFrancisco nor any other medical doctor opined that D.D.G. met Listing 112.11, which requires medically documented findings of marked inattention, marked impulsiveness and marked hyperactivity and at least 2 of the age-group criteria located in paragraph B2 of 112.02.   The assessment form submitted by Dr. DeFrancisco in September 2007 does not contain a category for hyperactivity or impulsiveness. Thus, while Dr. DeFrancisco has repeatedly diagnosed D.D.G. with conduct disorder, ADHD, low normal intelligence, and mild learning disorder, neither his letter nor completed assessment form contains a finding that D.D.G. has marked impulsiveness and marked hyperactivity. Plus, in Dr. DeFrancisco's treatment notes dated December 14, 2007, he observed that D.D.G.'s mood and affect appeared adequate, and that he was not hyperactive. (Id. at 468).   Thus, contrary to Plaintiff's contention, the ALJ did

24

not err in finding that D.D.G.'s ADHD does not meet or equal Listing 112.11 because the record does not contain medically documented findings of marked limitations in all three required categories during the current period of adjudication.

In addition, the ALJ did not err in finding that D.D.G. did not functionally equal the requirements of Listing 112.11. To functionally equal the Listing, the claimant must establish that he is markedly limited in at least two domains, or extremely limited in one domain. Plaintiff has not argued, and the record does not contain any evidence which demonstrates, that D.D.G. has extreme limitations in any of the domains. Additionally, the ALJ found D.D.G. has no limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being. Moreover, a searching review of the record does not reveal any evidence that suggests that D.D.G. is limited in these three domains, and Plaintiff has not argued let alone pointed to any evidence that suggests otherwise.

The next domain, acquiring and using information, focuses on how well a child is able to acquire or learn information and how well the child uses the information he has learned. 20 C.F.R. 416.9126a(g). With respect to this domain, the ALJ determined that D.D.G. has a less than marked limitation in acquiring and using information, and relied upon D.D.G.'s grade reports, IQ scores, and history of no special education. The

25

undersigned finds that the ALJ's finding is supported by substantial evidence. As noted supra, while the record reflects that D.D.G. has been diagnosed with conduct disorder, ADHD, low normal intelligence, and mild learning disorder, the record also reflects that D.D.G. has been able to advance in school in regular classes, and Dr. DeFrancisco reported that despite D.D.G.'s conditions, he was not markedly behind in school. In fact, the record before the ALJ did not contain any information which indicates that D.D.G. has repeated any grade. Additionally, at the administrative hearing, Plaintiff testified that D.D.G. made As, Bs, Cs, and Ds, and that he would be going into the eighth grade when school resumed in the fall. The undersigned finds that this constitutes substantial evidence in support of the ALJ's finding that D.D.G. is not limited in the domain of acquiring and using information.

The next domain, attending and completing tasks, measures how well a claimant is able to begin and carry through and finish activities, including the pace at which he performs activities and the ease of changing activities. 20 C.F.R. 416.(a)(h). The undersigned finds that the ALJ properly found that D.D.G. has less than marked limitations in attending and completing tasks, and in doing so, she properly rejected the opinions of Dr. DeFrancisco that D.D.G. has marked episodes of deteriorations, marked limitations in his ability to carry out

instructions in a school setting and to respond appropriately to school matters and frequent deficiencies of concentration, persistence or pace.

In rejecting Dr. DeFrancisco's findings, the ALJ determined that the findings are not consistent with his treatment records nor the other evidence of record. According to the ALJ, Dr. DeFrancisco's treatment records described D.D.G.'s ADHD as mild, and documented good response to treatment with medication, and the teacher's assessment and that of the state agency consultant were also consistent with a less than marked limitation in this domain. Indeed, the undersigned finds that while Dr. DeFrancisco diagnosed D.D.G. with ADHD and a learning disorder, he noted that despite his learning disorder and behavior problems, D.D.G. was not markedly behind in school, and he attributed some of D.D.G.'s behavior to being lazy and inconsistent discipline or lack of supervision. Accordingly, the undersigned finds that substantial evidence supports the ALJ's finding that D.D.G. has a less than marked limitation in this domain.

The final domain, interacting and relating with others focuses on how well a child is able to initiate and sustain emotional connections with others, develop and use language of the community, cooperate with others, comply with rules, etc. The ALJ found that D.D.G. has less than marked limitations in

this domain and noted that D.D.G.'s teacher reported no significant limitation in this domain, and that Dr. DeFrancisco's treatment notes indicate that D.D.G.'s problems in this area result from inconsistent parenting and lack of supervision.  In Dr. DeFrancisco's September 2007 evaluation, he noted that the results from personality testing showed indications of conduct disorders with little regard for other people and resistance to authority.  He also noted that D.D.G.'s personality patterns are very unruly and shows social as well as psychological underdevelopment.  Dr. DeFrancisco's opined that D.D.G. has a marked degree of limitation in maintaining social functioning and his treatment notes and the school records are replete with comments about D.D.G.'s behavior problems, including repeated instances of fighting and/or conflicts with other students.

Additionally, Plaintiff reported that D.D.G. cannot get along with his siblings and that he has no friends in the neighborhood, although D.D.G. testified that he gets along with his coach and has some friends on the football team. It appears that the ALJ rejected Dr. DeFrancisco's opinion regarding this domain because his treatment notes indicate that problems in this domain resulted from inconsistent parenting and lack of supervision.  The undersigned finds that while Dr. DeFrancisco's treatment notes repeatedly suggest that inconsistent parenting

and lack of supervision are contributing to D.D.G.'s behavior problems, there is strong evidence, including the personality testing, which reflect that whatever the cause, D.D.G. has marked limitations in the domain of interacting and relating with others. However, assuming arguendo that the ALJ erred in failing to find that D.D.G. has marked limitations in this area, the error is harmless because there is substantial record evidence in support of the ALJ's findings with respect to the other domains. Accordingly, the ALJ properly found that D.D.G. impairments does not functionally equal a Listing, and the record contains substantial evidence which supports the ALJ's findings and reveals that she carefully considered all the relevant evidence in finding that D.D.G. is not disabled.

## V.    Conclusion

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **RECOMMENDED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income, be **AFFIRMED.**

**DONE** this **6**$^{TH}$ day of **March, 2012.**


_____/s/ SONJA F. BIVINS_____
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.   ***Objection***.   Any party who objects to this recommendation or
anything in it must, within fourteen (14) days of the date of
service of this document, file specific written objections with
the Clerk of this court.  Failure to  do so will bar a *de novo*
determination by the district judge of anything in the
recommendation and will bar an attack, on appeal, of the factual
findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C);
*Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v.
Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The
procedure for challenging the findings and recommendations of
the Magistrate Judge is set out in more detail in SD ALA LR 72.4
(June 1, 1997), which provides that:

> A party may object to a recommendation entered by
> a magistrate judge in a dispositive matter, that
> is,  a matter excepted by 28 U.S.C. §
> 636(b)(1)(A), by filing a 'Statement of Objection
> to Magistrate Judge's Recommendation' within ten
> days[4]  after being served with a copy of the
> recommendation,  unless a different time is
> established by order.  The statement of objection
> shall   specify those portions of the
> recommendation to which objection is made and the
> basis  for the objection.  The objecting party
> shall  submit to the district judge, at the time
> of  filing the objection, a br  ief setting forth
> the party's arguments that the magistrate judge's
> recommendation  should be reviewed de novo and a
> different  disposition made.  It is insufficient
> to  submit only a copy of the original brief
> submitted  to the magistrate judge, although a
> copy  of the original brief may be submitted or
> referred  to and incorporated into   the  brief in
> support  of the objection.  Failure to submit a

---

[4]Effective December 1, 2009, the time for filing written
objections was extended to "14 days after being served with a
copy of the recommended disposition[.]"  Fed. R. Civ. P.
72(b)(2).

brief in support of the objection may be deemed
an abandonment of the objection.


A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment
can be appealed.

2.    ***Transcript (applicable Where Proceedings Tape Recorded).***
Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the
Magistrate Judge finds that the tapes and original records in
this case are adequate for purposes of review.  Any party
planning to object to this recommendation, but unable to pay the
fee for a transcript, is advised that a judicial determination
that transcription is necessary is required before the United
States will pay the cost of the transcript.


DONE this 6th day of **March, 2012.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**